IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN MCBREARTY;                    :        CIVIL ACTION
CARL MCBREARTY; and                :
NINA MCBREARTY                     :

      Plaintiffs,                  :
                                   :
   v.                              :
                                   :
DELAWARE COUNTY SHERIFF'S          :
DEPARTMENT; NORWOOD BOROUGH        :
POLICE DEPARTMENT; and DELAWARE    :
COUNTY                             :
                                   :
      Defendants.                  :        NO.    02-4553

<u>MEMORANDUM AND ORDER</u>

     Presently before the Court are Defendant Borough Norwood Police Department's Motion

for Sanctions Against Plaintiffs (Dkt. No. 39), Plaintiffs' Motion for Summary Judgment (Dkt.

No. 41), Defendant Norwood Borough Police Department's Motions for Summary Judgment

(Dkt. Nos. 42-44), and Defendants Delaware County and Delaware County Police Department's

Cross-Motion for Summary Judgment (Dkt. No. 46).  For the reasons that follow, Plaintiffs'

Motion for Summary Judgment is DENIED, Defendant Borough Norwood Police Department's

Motion for Sanctions Against Plaintiffs is DENIED[1] and Defendant Norwood Borough Police

Department's Motions for Summary Judgment are DENIED.  The Cross-Motion for Summary

---

[1]     The Court finds that the circumstances of this case do not merit granting
Defendant's Motion for Sanctions against these Plaintiffs, who are proceeding <u>pro</u> <u>se</u>.  <u>See</u>
Fed.R.Civ.P. 11(c).

Judgment filed by Defendants Delaware County and Delaware County Police Department is

GRANTED.

<strong>Factual Background and Procedural History</strong>

On July 9, 2002, Plaintiffs John McBrearty ("John"), Carl McBrearty ("Carl") and Nina

McBrearty ("Nina"; John, Carl and Nina are collectively identified as "Plaintiffs")[2] filed the

instant action against Defendants Delaware County Sheriffs' Department, Norwood Borough

Police Department and Delaware County (collectively identified as "Defendants") pursuant to 42

U.S.C. § 1983. (Dkt. No.1). Plaintiffs' Amended Complaint was filed on December 17, 2002.

(Dkt. No. 11).

<strong>The Eviction</strong>

The allegations contained in the Amended Complaint pertaining to the Norwood

Defendants arise from events surrounding a divorce action between John and Belinda McBrearty

("Belinda"). On August 28, 2000, Judge Fitzpatrick of the Delaware County Court of Common

Pleas entered a Court Order granting Belinda 55% of John's and Belinda's marital estate

consisting of 649 Seneca Avenue, Norwood, Pennsylvania (the "Seneca Avenue residence") and

55% of his 401(k) plan. The Order further provided that the Seneca Avenue residence was to be

immediately listed for sale. (See August 28, 2000 Order of Judge Fitzpatrick).

In response to Judge Fitzpatrick's Order, John filed two appeals: one undated and the

second on October 6, 2000. (See John McBrearty's Dep. at 25-26). Both appeals were denied.

(Id.). Additionally, on July 2, 2001, Judge Fitzpatrick entered an Order finding John in contempt

of the August 28, 2000 Order. The July 2001 Order further decreed that "John McBrearty is

---

[2]        Carl and Nina are the son and daughter of John and Belinda McBrearty.

hereby evicted from the premises known as 649 Seneca Avenue . . . [and] is not to return to same for any reason.  If necessary, Defendant [John] is to be forcibly removed from said premises by the Sheriff of Delaware County."  (See July 2, 2001 Order of Judge Fitzpatrick). The Order also mandated the immediate transfer of the Seneca Avenue residence to Belinda.  (Id.)

On July 5, 2001, Belinda's attorney, Michael Raffaele, sent a letter to John advising of the eviction.  (See July 5, 2001 letter to John McBrearty, Defs. Norwood's Brief at Exhibit L). On July 10, 2001, John filed an appeal of Judge Fitzpatrick's July 2, 2001 Order which was denied.  (See Notice of Appeal, Defs. Norwood's Brief at Exhibit M).  Ultimately, on July 19, 2001, title to the Seneca Avenue residence was legally transferred from John to Belinda.  (See July 19, 2001 Indenture, Defs. Norwood's Brief at Exhibit N).

On March 7, 2002, Belinda's attorney, Kathleen Piperno, Esquire ("Piperno"), sent a letter to the Delaware County Sheriff's Office, which enclosed Judge Fitzpatrick's July 2, 2001 Order and requested the eviction of John from the Seneca Avenue residence. (See March 7, 2002 letter from Piperno to Sheriff of Delaware County, Defs. Norwood's Brief at Exhibit P).  Piperno sent a second letter on March 11, 2002, informing the Sheriff that John may be found at the Seneca Avenue residence nightly at approximately 6:00 p.m.  (See March 11, 2002 letter from Piperno to Sheriff of Delaware County, Defs. Norwood's Brief at Exhibit Q).

Subsequently, on March 13, 2002, Belinda filed a Petition for a Protection from Abuse (the "Petition").  (See March 13, 2002 Petition for Protection from Abuse Application filed by Belinda McBrearty, Defs. Norwood's Brief at Exhibit R).  The Petition listed two addresses for Belinda: 1408 Blackrock Road, Swarthmore, Pennsylvania 19081 and 649 Seneca Avenue, Norwood, Pennsylvania 19086.  (Id.).  The verified Petition stated that, on March 7, 2002, at

3

approximately 8:00 p.m., John repeatedly threatened to kill Belinda and to blow up the house if she ever had him evicted. The Petition also stated that Belinda had endured years of physical and mental abuse, including John pointing a gun at her, and that she was fearful for her life. (Id.)

In response to Belinda's Petition, Judge Ann Osborne of the Delaware County Court of Common Pleas entered a Temporary Protection from Abuse Order ("PFA Order") against John and Carl McBrearty on March 13, 2002. (See Temporary Protection from Abuse Order, Defs. Norwood's Brief at Exhibit S). The PFA Order mandated the eviction and exclusion of John and Carl from the 1408 Blackrock Road and 649 Seneca Avenue residences. (Id.) The PFA Order also instructed law enforcement officials to enforce violations of the order. (Id.)

In the evening of March 13, 2002, police evicted John and Carl from the Seneca Avenue residence in accordance with the Eviction and PFA Orders. (See Affidavit of Norwood Borough Police Officer William Manning, II, dated August 26, 2003 at ¶ 8, Defs. Norwood's Brief at Exhibit C). In the spirit of the terms of the PFA Order, police confiscated six guns, various pocket knives, and a half a box of ammunition from the Seneca Avenue residence during the eviction. (See Weapon Receipt of Sheriff of Delaware County, Defs. Norwood's Brief at Exhibit U).

After the eviction, on March 21, 2002, Belinda, John and Carl, and counsel for each of the parties appeared at a proceeding before Judge Barry Dozer. Following an in camera discussion with counsel for John and Belinda, a stipulation for the eviction of John and Carl from the Seneca Avenue residence was entered on the record. (See John McBrearty Dep. at 99-105; Carl McBrearty Dep. at 12. 19, 36). Both John and Carl explicitly assented to the terms of the stipulation in open court. (See  John McBrearty Dep. at 99-101; Carl McBrearty Dep. at 12,

4

19, 30).  Finally, John and Carl were granted unfettered access to the Seneca Avenue residence

until 12:00 p.m. on March 25, 2002.  (See March 21, 2002 Transcript of Proceedings before the

Honorable Barry Dozer at 19-22; Defs. Norwood's Brief at Exhibit W).

### The Permit

The Amended Complaint contains allegations, spanning the time period of March 5, 2002

through March 21, 2002, against the Delaware County Defendants which are peripherally related

to the divorce proceeding.  John McBrearty maintains that on March 5, 2002, he went to the

Media Police Station and requested a permit for a "one-man peaceful protest" at the Delaware

County Courthouse in Media Borough.  (Dep. of John McBrearty at 41-42).  At this time, John

was informed that Mr. Jeffrey Smith's ("Smith") signature was required to approve any

application for a public gathering.  (Defs.' Delaware County Br. at 1).

On March 7, 2002, John McBrearty spoke with Smith regarding the permit.  Smith

informed John that a Media Borough Ordinance required applicants to submit a written request to

whomever was responsible for property for which the permit was sought, detailing the particulars

of the demonstration.  (Id.).  Smith also advised John that Marianne Grace ("Grace"), Executive

Director of Delaware County, was the individual responsible for the front lawn of the Delaware

County Courthouse where John sought to demonstrate.  John spoke with Grace on March 12,

2002, and she informed him that he would also need to speak with Sam Ziviello ("Ziviello"),

Chief of the Delaware County Park Police.  (See John McBrearty Dep. at 31).   John spoke with

Ziviello regarding the parameters of his demonstration and advised Ziviello that the protest

would initially last for "six months maybe longer."  (See Amended Complaint; see also Ziviello

Affidavit).  Based on the information provided by John, Ziviello told him that he needed to send

a letter to Grace detailing the parameters of the intended demonstration. (Id.).  On March 14,

2002, John delivered a letter to Grace's office stating his intentions for a "one man peaceful

protest." (See John McBrearty letter, Def. Delaware County Br., Exhibit Q).

On March 18, 2002, John phoned both Grace and Ziviello and informed them that he no

longer wanted to obtain a permit for his "one man peaceful protest." (See John McBrearty Dep.

at 41-42).  At no point was John's permit ever denied by Delaware County. (Id. at 41-42, 44).

### Plaintiffs' Allegations

Based on this factual record, Plaintiffs allege that Defendants violated the following

constitutional rights: First Amendment right to free speech, due process rights, Fourth

Amendment right to be free from unreasonable searches and seizures, right to privacy, Second

Amendment right to bear arms. (Pls.' Motion at 1).  In support of the First Amendment claim,

Plaintiffs attempt to connect the submission of an application for a peaceful protest permit with

the eviction from the Seneca Avenue residence, and interpret the confluence of these events as an

effort to violate free speech rights. (Id. at 2-3).  As to the due process claim, Plaintiffs allege due

process violations in: (1) the eviction from the Seneca Avenue residence, which was not Belinda

McBrearty's residence, and (2) the illegally compelled production of documents during the

discovery process.[3] (Id. at 3).  With respect to the Fourth Amendment claim, Plaintiffs

specifically allege that their eviction pursuant to the court orders was illegal. (Id.)  Finally, as to

the Second Amendment claim, Plaintiffs specifically allege that Defendants used the PFA Order

---

[3]      This claim is plainly without merit.  That the parties are required to produce
documents as part of the litigation process is mandated by the Federal Rules of Civil Procedure.
See Fed.R.Civ.Pr. 26, 34. Therefore, Plaintiffs' due process claim based on their being compelled
to produce documents in connection with this litigation – litigation which they initiated -- is
denied.

to illegally seize guns from the Seneca Avenue residence.[4]   (Id.)

## Standard of Review

Summary judgment is appropriate when "there is no genuine issue of material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994). The moving party bears the burden of showing that the record discloses an absence of genuine issues as to any material fact and that he is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 106 S.Ct. 2505, 91 L.Ed.2d. 202 (1970). Once the moving party has met its burden, the non-moving party must go beyond the pleadings to set forth specific facts showing that there

---

[4]      Plaintiffs also assert a malicious prosecution claim.  In order to establish a claim for a malicious prosecution, a plaintiff must prove: (i) the defendant initiated a criminal proceeding; (ii) that ended in the plaintiff's favor; (iii) which was initiated without probable cause; and (iv) that the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice.  See Rose v. Bartle, 871 F.2d 331, 349 (3d Cir. 1989). Because Plaintiffs fail to allege, let alone establish, any of the essential elements of a successful malicious prosecution claim, this claim must be denied.

Additionally, Plaintiffs appear to allege that Defendants conspired to violate their constitutional rights.  Plaintiffs, however, do not allege or prove a supporting factual basis and, indeed, fail to even identify specific individuals putatively involved in the conspiracy.  Complaints containing only conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights must be dismissed.  See Jordan v. Montgomery County, Pennsylvania, 415 F.2d 1006, 1007 (3d Cir. 1969); Aultman v. Padgett, 2003 WL 22358445, at * 5 (E.D. Pa. Sept. 10, 2003); Jackman v. City of Philadelphia, 2002 WL 501152, at * 1 (E.D. Pa Apr. 3, 2002).  Because Plaintiffs have failed to produce any evidence to support their conspiracy allegations, the claim must be denied.

is a genuine issue for trial.  See Fed. R. Civ. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d. 538 (1986).  There is a genuine issue for trial "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 249.  "Such affirmative evidence – regardless of whether it is direct or circumstantial - must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." Williams v. Borough of W. Chester, 891 F.2d 458, 460-61 (3d Cir. 1989).

### Qualified Immunity

In Forbes v. Township of Lower Merion, 313 F.3d 144, 146 (3d Cir. 2002), the Third Circuit outlined qualified immunity stating:

> Qualified immunity insulates from civil liability government officials performing discretionary functions insofar as "their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987).  In assessing a claim of qualified immunity, we must review the law relevant to the official's behavior and ask whether the official could have believed that his or her actions were justified by law.  See Good v. Dauphin Cty. Sov. Sercs., 891 F.2d 1087, 1094 (3d Cir. 1989).  The second part of this inquiry contains two components.  To overcome the defense of qualified immunity, (1) the facts, "taken in the light most favorable to the party asserting the injury, [must] show the officer's conduct violated a constitutional right," Saucer v. Katz, 533 U.S.194,201 (2001), and (2) "the contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right." Anderson, 483 U.S. at 640.

> Qualified immunity is defeated if an official "knew or reasonably should have know that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury." Wood v. Strickland, 420 U.S. 308, 322 (1975).  The doctrine aims to exclude the "plainly incompetent" and "those who knowingly violate the law" while accommodating reasonable "mistaken judgments." Hunter v. Bryant, 502 U.S. 223, 229 (1991) (citation and internal quotation marks omitted).  If an official could have reasonably believed that his or her actions were lawful, the official receives immunity even if in fact the actions were not lawful.

8

Qualified immunity is not a mere defense from liability, it is an entitlement to not to stand trial or face the other burdens of litigation. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). The issue of qualified immunity should be resolved at the earliest possible stage in litigation. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

The Defendants' qualified immunity defense prompts the Court to make a two-part inquiry: (i) whether the Plaintiffs have successfully alleged a deprivation of a constitutional right; and (ii) whether the deprived right was clearly established at the time of the suspect event. County of Sacramento v. Lewis, 523 U.S. 833, 842 n.5, 118 S. Ct. 1708, 1714 n.5, 140 L. Ed. 2d 1043 (1998); Schieber v. City of Philadelphia, 320 F.3d 409, 416 (3d Cir. 2003); Eddy v. Virgin Islands Water and Power Auth., 256 F.3d 204, 208 (3d Cir. 2001). Accordingly, the Court must first resolve whether the Plaintiff has alleged a deprivation of a constitutional right. Only after affirmatively answering this initial inquiry is it necessary to consider whether the deprived right was clearly established at the time of the suspect event. See, e.g., Siegert v. Gilley, 500 U.S. 226, 232, 111 S. Ct. 1789, 1793, 114 L. Ed. 2d 277 (1991) ("A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is clearly established at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all.").

### First Amendment Claim

John has not established a violation of his First Amendment rights in connection with his application for a "one man peaceful protest."[5] On the contrary, John admitted at his deposition

---

[5]    Both Carl and Nina admitted at their depositions that they were not involved in the permit application process. (See Dep. of Nina McBrearty at 46, 49; Dep. of Carl McBrearty at 33-34). Therefore, neither Carl nor Nina has standing to assert a First Amendment claim with

that his request for the permit was never denied and that, indeed, he voluntarily made the decision to abandon his efforts to obtain the permit.  John's deposition testimony is corroborated by the affidavits both of Grace and Ziviello.  Finally, Defendant Delaware County affirmatively states it will assist Plaintiff John McBrearty in processing his permit and issue a letter to Media Borough, which is necessary for approval, if he ever seeks to reinstate or renew the request. (Defs.' Delaware County Br. at 12-13). Viewing the facts in the light most favorable to John and drawing all inferences in his favor, John fails to establish a violation of his First Amendment rights.  Accordingly, John's claim for a violation of his First Amendment rights must be denied.[6]

### Claims Arising from Plaintiffs' Eviction from the Seneca Avenue Residence

In connection with the eviction from the Seneca Avenue residence, Plaintiffs allege the following constitutional violations: (1) due process violations flowing from the use of information provided by Belinda, a non-resident of the Seneca Avenue residence, in the decision to evict Plaintiffs from that residence;  (2) a violation of their Fourth Amendment right to be free from unreasonable searches and seizures; (3)  a violation of their right to privacy; and (4) a violation of their Second Amendment right to bear arms.

Plaintiffs fail to provide guidance as to how this factual record may fairly be viewed as

---

respect to the allegations surrounding the permit.  Constitutional standing requires pleadings that show (1) a legally recognized injury; (2) caused by the named defendant or at least "fairly traceable to the challenged action of the defendant"; and (3) that a favorable decision by the court would likely redress.  See Pryor v. National Collegiate Athletic Ass'n, 288 F.3d 548, 561 (3d Cir. 2002).  Because neither Carl nor Nina applied for a permit, they cannot establish that they have suffered a constitutional injury.

[6]    Because John fails to establish a violation of his First Amendment rights, the Court need not reach the issue of qualified immunity with respect to this claim.

establishing violations of his constitutional rights.  Accordingly, the claims are waived and may

properly be denied on this basis alone.  See Wagner v. Reynolds, 128 F.3d 166, 178 (3d Cir.

1997)  ("an argument consisting of no more than a conclusory assertion ... will be deemed

waived"); see also  Greenwood Partners, L.P. v. Cimnet, Inc., 2003 WL 22238981, at * 2 (E.D.

Pa. Sept. 26, 2003) ("Where a party makes no more than a single mention of a claim, the claim is

consequently waived.").

Assuming solely for purposes of discussion, however, violations of clearly established

constitutional rights arising from the March 13, 2002 eviction from the Seneca Avenue residence,

Defendants are entitled to qualified immunity.  "Qualified immunity should be denied only if one

could reasonably conclude that the unlawfulness of an officials's conduct was so apparent that no

reasonable official could have believed it lawful."  Lee v. Mihalich, 847 F.2d 66, 69 (3d Cir.

1988).  Stated differently, qualified immunity is intended to protect "all but the plainly

incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341, 106

S. Ct. 1092, 1096, 89 L. Ed. 2d 271 (1986); Orsatti, 71 F.3d at 484.

Viewing the facts in the light most favorable to Plaintiffs and drawing all inferences in

their favor, Officer Manning and the other officers had a sufficient basis for evicting John and

Carl from the Seneca Avenue residence and confiscating the weapons found at the Seneca

Avenue residence because it is clear from the record that they were simply carrying out their

official duties by enforcing the Eviction and PFA Orders.  Indeed, the Eviction Order entered by

Judge Fitzpatrick on July 2, 2001, specifically granted Defendants authority, if necessary, to

forcibly remove John from the premises: "John McBrearty is hereby evicted from the premises

known as 649 Seneca Avenue . . . [and] is not to return to same for any reason.  If necessary,

11

Defendant [John] is to be forcibly removed from said premises by the Sheriff of Delaware

County."[7]  And although Carl was not subject to the Eviction Order, the PFA Order specifically

instructed that both he and John be excluded from the Seneca Avenue residence.

(See Temporary Protection from Abuse Order, Defs. Norwood's Brief at Exhibit S).

Accordingly, the Court finds that, based on the existence of the Eviction Order and the PFA

Order, Defendants could have reasonably believed that it was entirely lawful to evict both John

and Carl from the Seneca Avenue residence on March 13, 2002, and they are therefore entitled to

qualified immunity for all claims asserted against them by Plaintiffs.

    Moreover, Defendants confiscated the weapons located at the Seneca Avenue residence

pursuant to the PFA Order entered by Judge Osborne on March 13, 2002.  The PFA Order

specifically required that John and Carl immediately relinquish all weapons to the Sheriff's

Office or a designated local law enforcement agency and prohibited them from possessing,

transferring or acquiring any other weapons while the Order is in effect.[8]  (Id.).  Indeed, the Court

finds that the Officers were required to confiscate the weapons found at the Seneca Avenue

residence in order to properly effectuate the PFA Order, an important component of which was to

secure Belinda's safety.   Because the PFA Order required John and Carl to turn over all weapons

to the Delaware County Sheriff's Department and prohibited them from possessing any weapons,

---

    [7]    Nina McBrearty's admitted at her deposition that none of the Defendants evicted
her from the Seneca Avenue residence.  Indeed, Nina further acknowledged that Defendants
permitted her to enter the premises and obtain some personal belongings after her entry was
precluded by Belinda.  (See Dep. of Nina McBrearty at 32-37).

    [8]    Additionally, the Petition for Protection from Abuse filed by Belinda stated that
John had threatened to kill her and blow the house up if he were evicted the Seneca Avenue
residence.  The Petition also stated that John was in possession of guns, knives, and ammunition
at the Seneca Avenue residence.

the Court finds that, based on the existence of the PFA Order, Defendants could have reasonably believed that it was entirely lawful to confiscate the weapons located at the Seneca Avenue residence on March 13, 2002, and they are therefore entitled to qualified immunity for all claims asserted against them by Plaintiffs.

In short, Plaintiffs have presented no evidence from which one could infer that, in light of the Eviction and PFA Orders, the conduct of Officer Manning and the other officers was so apparently improper that no reasonable official could have believed it lawful. Accordingly, Officer Manning and the other officers are entitled to qualified immunity for the constitutional claims arising out of the March 13, 2002 eviction and the confiscation of weapons.

**Conclusion**

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment is DENIED, Defendant Borough Norwood Police Department's Motion for Sanctions Against Plaintiffs is DENIED, and Defendant Norwood Borough Police Department's Motions for Summary Judgment and Defendants Delaware County's and Delaware County Police Department's Cross-Motion for Summary Judgment are GRANTED. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN MCBREARTY;                    :        CIVIL ACTION
CARL MCBREARTY; and                :
NINA MCBREARTY                     :
                                   :
           Plaintiffs,             :
                                   :
      v.                           :
                                   :
DELAWARE COUNTY SHERIFF'S          :
DEPARTMENT; NORWOOD BOROUGH        :
POLICE DEPARTMENT; DELAWARE        :
COUNTY; and MEDIA BOROUGH          :
                                   :
           Defendants.             :        NO.    02-4553

<u>ORDER</u>

AND NOW this     day of February, 2004, it is hereby ordered as follows:

1.  Defendant Borough Norwood Police Department's Motion for Sanctions Against Plaintiffs (Dkt. No. 39) is DENIED.

2.  Plaintiffs' Motion for Summary Judgment (Dkt. No. 41) is DENIED.

3.  Defendant Norwood Borough Police Department's Motions for Summary Judgment (Dkt. Nos. 42, 43, 44) are GRANTED.

4.  Defendants Delaware County and Delaware County Police Department's Cross-Motion for Summary Judgment (Dkt. No. 46) is GRANTED.

_____The Clerk of Court is directed to statistically close this matter.

BY THE COURT:

Legrome D. Davis, J.

14